IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ying Ye, | ) |
|     Plaintiff, | ) ) ) ) ) |
|     v. | ) No. 18-cv-1961 ) ) |
| Global Sunrise, Inc. and GlobalTranz Enterprises, Inc. | ) ) ) |
|     Defendants. | ) |

## Memorandum Opinion and Order

On November 7, 2017, Shawn Lin's motorcycle collided with a tractor trailer that was being operated by David Carty, an employee of Defendant Global Sunrise, Inc. ("Global Sunrise"). Mr. Lin died as a result of his injuries. Ying Ye, Mr. Lin's widow, brought the instant action against Global Sunrise and GlobalTranz Enterprises, Inc. ("GlobalTranz"), the freight broker that engaged Global Sunrise. *See* ECF No. 99 ¶¶ 4-5. Ms. Ye claims that defendants are vicariously liable for Mr. Carty's negligent driving. GlobalTranz now moves for summary judgment [91], arguing that it is not vicariously liable for any negligence on the part of Mr. Carty or Global Sunrise as a matter of law. For the reasons that follow, the motion is granted.

I.

The relevant facts are largely undisputed. GlobalTranz provides third-party logistics services and acts as a freight broker, meaning that it arranges for transportation of cargo by third-party motor carriers. ECF No. 99 ¶¶ 4-5. It is not itself a licensed motor carrier and does not own or operate any trucks, trailers, or other transportation equipment. *Id.* ¶ 7.

One of GlobalTranz's clients was U-Haul Moving & Storage ("U-Haul"); it brokered loads for U-Haul using several different motor carriers. *Id.* ¶ 6. GlobalTranz and U-Haul entered into a "Transportation Management System Agreement" on April 14, 2016, which concerned transport of U-Haul's "U-Box Containers." *See* ECF No. 99-1. As part of that agreement, GlobalTranz agreed to abide by several conditions, including: (1) "[t]o provide an Air Ride Trailer;" (2) "[t]o NOT use refrigerated trucks or trailers;" (3) "[t]o NOT provide 'Do it yourself' moving type rental trucks or trailers;" (4) "[t]o comply with all laws, rules, statutes and regulations that may apply . . . including obtaining and maintaining on an ongoing basis any and all applicable state and federal licensure;" and (5) "[t]o perform the Services by engaging in 'No Touch Loads.'" *Id.* § 3.1. GlobalTranz also agreed that a $250 fee would be assessed for loads delivered 1-3 days past the delivery date and a $500 fee would be assessed for loads delivered 4 or more days past the delivery date. *Id.* App'x C. In addition,

2

Section 2.2 of the Agreement provides: "All persons, if any, hired by [GlobalTranz] shall be employees or subcontractors of [GlobalTranz] and shall not be construed as employees or agents of [U-Haul] in any respect. [GlobalTranz] remains responsible for the quality and timeliness of performance under this Agreement notwithstanding any delegation." *Id.* § 2.2.

On August 10, 2017, GlobalTranz entered into a "Freight Transportation Broker-Motor Carrier Agreement" defining its relationship with Global Sunrise. *See* ECF No. 94-24. The relationship was not exclusive--the Agreement provided: "GlobalTranz is not restricted against tendering its freight to other carriers; [Global Sunrise] is not restricted against performing transportation for other shippers or brokers." *Id.* § 3. It also contained the following provision:

> **INDEPENDENT CONTRACTOR** [Global Sunrise] is an independent contractor, and as such is wholly responsible in every way for such persons as [Global Sunrise] hires or employs. [Global Sunrise] shall be wholly responsible for performing the contemplated transportation and for all costs and expenses of such transportation, including but not limited to, costs and expenses of all [Global Sunrise]'s transportation equipment, its maintenance, and those persons who operate it. As to GlobalTranz, [Global Sunrise] shall

3

> have the sole and exclusive responsibility for the manner in which its employees and/or independent contractors perform the transportation service, including the equipment provided. Customer may specify particular equipment according to type, weight, value or dimension of shipment.

*Id.* § 8. Global Sunrise also agreed not to "in any way sub-contract, broker, or arrange for the freight to be transported by a third party without GlobalTranz's prior written consent." *Id.* § 14.

In October 2017, GlobalTranz agreed to arrange for transportation of a load of U-Haul "U-Box" cargo that was to be shipped from a U-Haul facility in Chicago, Illinois to another facility in Conroe, Texas. ECF No. 99 ¶¶ 12-13. GlobalTranz brokered that load to Global Sunrise on October 26, 2017. *Id.* ¶ 15. In connection with the load, GlobalTranz issued a Rate Confirmation, which was signed by GlobalTranz and a Global Sunrise dispatcher. *See* ECF No. 94-25. The Rate Confirmation specified that the load was to be picked up on October 30, 2017 and delivered November 6. *Id.* Under the heading "Important Load Notes," the Rate Confirmation provided:

> Carrier is responsible for relaying 2 hour pickup and delivery ETA to broker for scheduling purposes. If ETA is not communicated, any resulting accessorials will be

4

denied. Must be 53' swing door, dry van with air ride, NO reefers [refrigerated trailers]. DIMS 60" x 96" x 93"; 2500lbs (Per pallet). . . . Shipment must deliver 11/6/2017. If the load delivers past the required delivery date, a 15% rate reduction will be applied per day. Shipment is subject to cancellation or rate adjustment for ubox increases and/or decreases.

*Id.* Additionally, in the fine print at the bottom, the Rate Confirmation specified: "Driver must call GlobalTranz (GTZ) to be dispatched. Driver or carrier's dispatch must call GTZ each day during transit to provide a tracking update/driver location report. . . . Accurate tracking updates must be provided daily." *Id.* Global Sunrise also agreed that "[p]roper load temperature [wa]s the Driver/Carrier's responsibility" and guaranteed compliance with several federal laws and regulations. *Id.*

The load was retrieved from U-Haul and brought to Global Sunrise's yard in Bolingbrook, Illinois. *See* ECF No. 99 ¶¶ 26, 49. Mr. Carty then picked it up in Bolingbrook on November 3, 2017. *Id.* ¶ 49.

Mr. Carty was a driver employed by Global Sunrise. *Id.* ¶ 39. Global Sunrise paid Mr. Carty, provided Mr. Carty with the truck he drove, and relayed his driving assignments to him. *Id.* ¶¶ 43-44, 46. As an employee of Global Sunrise, GlobalTranz could not fire Mr. Carty, nor could it fine Mr. Carty directly for any reason

5

(although, as noted above, it could fine Global Sunrise). *Id.* ¶ 72. Mr. Carty never saw the Broker-Motor Carrier Agreement between Global Sunrise and GlobalTranz, nor did he receive a copy of the Rate Confirmation or know what terms it contained. *Id.* ¶¶ 65-66. Indeed, Mr. Carty did not communicate directly with GlobalTranz at any time regarding the load at issue despite the Rate Confirmation's requirement that the driver call GlobalTranz to be dispatched, for daily location updates, and regarding delivery time. *Id.* ¶¶ 64, 67.

GlobalTranz did not specify what route Mr. Carty was to take to Conroe, Texas, what speed to travel, or where to refuel. *Id.* ¶ 68. Accordingly, Mr. Carty was free to make his own decisions on those matters. That freedom appears to have been wielded irresponsibly here, however, because Mr. Carty delivered the load to U-Haul one day late, on November 7, 2017. ECF No. 105 ¶ 39. According to Mr. Carty, the accident occurred as Mr. Carty was pulling into the U-Haul parking lot to make his delivery. ECF No. 99 ¶ 58. Because the load was a day late, GlobalTranz applied a 15% rate reduction in conformance with the Rate Confirmation's terms. ECF No. 105 ¶ 39.

## II.

GlobalTranz argues that it is not vicariously liable for Mr. Carty's accident as a matter of law. I agree.

Under Illinois law, "[a] principal is vicariously liable for the conduct of its agent but not for the conduct of an independent contractor." *Sperl v. C.H. Robinson Worldwide, Inc.*, 946 N.E.2d 463, 470 (Ill. App. Ct. 2011). "An agency is a consensual relationship in which a principal has the right to control an agent's conduct and an agent has the power to affect a principal's legal relations"; in contrast, "[a]n independent contractor undertakes to produce a given result but, in the actual execution of the work, is not under the order or control of the person for whom he does the work." *Id.* "In determining whether a person is an agent or an independent contractor, the court's cardinal consideration is the right to control the manner of work performance, regardless of whether that right was actually exercised." *Id.* at 471. "Another significant factor is the nature of the work performed in relation to the general business of the employer. . . . Other factors to consider are: (1) the right to discharge; (2) the method of payment; (3) the provision of necessary tools, materials, and equipment; (4) whether taxes are deducted from the payment; and (5) the level of skill required." *Id.* "Though no single factor controls, . . . and weighing them is typically a question of fact, a court may decide the question if the underlying facts are not disputed." *Kolchinsky v. W. Dairy Transport, LLC*, 949 F.3d 1010, 1013 (7th Cir. 2020) (citing *Dowe*

7

*v. Birmingham Steel Corp.*, 963 N.E.2d 344, 351 (Ill. App. Ct. 2011)).

Although a close question, I conclude that the level of control GlobalTranz was able to exercise over Global Sunrise's operation is insufficient to support an agency relationship. The best evidence of agency comes from the Rate Confirmation, which required Global Sunrise to use a specific type of trailer, imposed a rate reduction for late deliveries, required the driver to be in contact with GlobalTranz at various times, and mandated compliance with various federal laws. *See* ECF No. 94-25. GlobalTranz points out that Mr. Carty did not receive a copy of the Rate Confirmation or know what it said and, indeed, did not comply with its terms regarding communication with GlobalTranz. *See* ECF No. 92 at 9-10. "However, it is the right or duty to supervise or control, not the exercise of that right, that determines whether agency exists." *Powell v. Dean Foods Co.*, 7 N.E.3d 675, 697 (Ill. App. Ct. 2013).

Although the Rate Confirmation does allow GlobalTranz to assert a degree of control over Global Sunrise's operations, it falls short of the level of control that Illinois courts have required to support a finding of agency. *See, e.g.*, *id.* at 696-97 (finding agency where carrier worked exclusively for distributor, used distributor's trailer with distributor's logo, and drivers were bound to wear distributor's clothing and act in

8

a manner that would encourage positive opinions about distributor); *Hoffman v. Crane*, 2014 IL App (1st) 122793-U ¶ 36 (finding agency where carrier manual developed in part by product producer required drivers to maintain well-kept appearance and perform duties in professional manner, and producer could prohibit drivers from hauling its product if drivers did not follow those requirements). Moreover, courts that have considered contractual requirements similar to those imposed by the Rate Confirmation have found them insufficient to support a finding of agency. *See Kolchinsky*, 949 F.3d at 1013 (no agency although broker required carrier to contact it at various times and imposed fees for late or damaged deliveries); *Scheinman v. Martin's Bulk Milk Serv., Inc.*, No. 09 C 5340, 2013 WL 6467525, at *11 (N.D. Ill. Dec. 9, 2013) (no agency despite communication requirements and obligation to comply with federal, state, and local laws).

Other facts support my determination that Global Sunrise was an independent contractor here. GlobalTranz imposed no requirements regarding what route to take or how the driver ought to behave, and it could not fire Mr. Carty. *See* ECF No. 99 ¶¶ 68, 72. Global Sunrise, not GlobalTranz, paid Mr. Carty, provided the truck and equipment, and communicated assignments. *See id.* ¶¶ 43-44, 46. And in the Broker-Motor Carrier Agreement, Global Sunrise referred to itself as an independent contractor, *see* ECF No. 94-24 § 8, which, although not dispositive, weighs in favor of an

9

independent-contractor determination. *See, e.g.*, *Scheinman*, 2013 WL 6467525, at *9 ("A contract's statement of employment status is . . . considered a relevant--but not dispositive--factor in determining whether an individual is an independent contractor, insofar as it is 'indicative of the intent of the parties.'") (citing *Early v. Indus. Comm'n*, 553 N.E.2d 1112, 1118 (Ill. App. Ct. 1990)).

Ms. Ye relies heavily on the *Sperl* case, 946 N.E.2d 463, to argue that Global Sunrise was GlobalTranz's agent here. But in that case, the broker exercised a much higher degree of control over the driver. Specifically, the broker imposed a strict time schedule that required the driver to break federal regulations governing maximum driving time, required consistent communication, and compelled constant monitoring of the temperature of the load, all of which was enforced by a series of fines for noncompliance. 946 N.E.2d at 471-72. The broker also dispatched and paid the driver directly. *Id.* at 472. Because the broker in *Sperl* controlled the details of the driver's operations to a greater extent than GlobalTranz controlled the operations of Global Sunrise, *Sperl* is distinguishable.[1]

---

[1] Ms. Ye also argues that vicarious liability stems from a "statutory employment" relationship with GlobalTranz built on provisions in the Federal Motor Carrier Safety Regulations, particularly 49 C.F.R. § 390.5 (defining 'employees' under the regulations to include independent-contractor commercial motor vehicle operators) and 49 C.F.R. §§ 376.11-12 (requiring motor

10

Because I conclude that Global Sunrise and Mr. Carty were not agents of GlobalTranz as a matter of law, the motion for summary judgment [91] is granted.

                      **ENTER ORDER:**

                      */s/ Elaine E. Bucklo*
                      **Elaine E. Bucklo**
                      United States District Judge

Dated: November 2, 2021

---

carriers leasing vehicles from others to include a provision in the lease in which they assume responsibility for operation of the leased equipment). But these regulations do not supplant the common law of agency--"[c]ompliance with federal regulations is merely a factor that may be considered in a common law analysis." *Roberson v. Indus. Comm'n*, 866 N.E.2d 191, 202 (Ill. 2007); *see* 49 C.F.R. § 376.12(c)(4); *U.S. Bank v. Lindsey*, 920 N.E.2d 515, 527-28 (Ill. Ap. Ct. 2009) ("[A]ny employee status resulting solely from the statutory requirements is a fiction which exists only to insure the [interstate carrier's] responsibility to shippers and members of the public and not to create an employment relationship"); *see also McKeown v. Rahim*, 446 F. Supp. 3d 69, 77-82 (W.D. Va. 2020); *White v. Date Trucking, LLC*, No. ELH-17-1177, 2018 WL 2462921, at *4-5 (D. Md. June 1, 2018). Accordingly, the federal regulations do not alter my analysis above.